IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBORAH PEARSON, and<br>AVIATION WEST CHARTERS, LLC,<br>d/b/a ANGEL MEDFLIGHT,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLMARK, INC., d/b/a BLUE<br>CROSS AND BLUE SHIELD OF<br>IOWA; and UNITED SUPPLIERS,<br>INC. GROUP HEALTH PLAN,<br><br>Defendants. | 4:15-CV-3164<br><br>MEMORANDUM AND ORDER |

The plaintiffs, Deborah Pearson and Angel MedFlight, are suing the defendants, Wellmark, Inc. and United Suppliers Inc. Group Health Plan, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. The defendants have moved to dismiss counts II and III of the plaintiffs' amended complaint under Fed. R. Civ. P. 12(b)(6). Filing 40. For the reasons explained below, the defendants' motion will be granted in part and denied in part.

BACKGROUND

The plaintiffs' allegations are briefly summarized as follows. Plaintiff Deborah Pearson broke her leg while travelling in the Dominican Republic. Filing 37 at 1. Due to prior complications with surgery, Pearson's doctor recommended that she be evacuated by air ambulance to Good Samarian Hospital in Kearney, Nebraska. Plaintiff Angel MedFlight, which specializes in air-ambulance services, performed the medical evacuation on February 22, 2013. Filing 37 at 4.

Pearson is a beneficiary of an employee benefits plan that is administered by defendant Wellmark. Filing 37 at 1. According to Pearson, she contacted Wellmark before taking the flight for precertification, but those requests were allegedly ignored. Filing 37 at 2. Pearson claims that she did not hear from Wellmark until several months after the flight, when it informed her that it would cover $28,402.00 of her claim—or 5% of the flight's cost. Filing 37 at 2. This reimbursement rate was allegedly based on the "maximum allowable fee" for a flight to Miami. Filing 37 at 4. And because Wellmark had determined that the air ambulance was "medically necessary" to Miami, but not Kearney, it denied full reimbursement. Filing 37 at 4.

The plaintiffs claim that Wellmark's "medical-necessity determination" was without adequate reason or justification. Filing 37 at 4. They also claim that Wellmark has failed to explain the basis or methodology for its calculation of benefits, and has refused to provide documents "relevant to its benefit determination." Filing 37 at 5. The plaintiffs seek equitable relief in counts II and III under 29 U.S.C. § 1132(a)(2) and (3). The defendants have moved to dismiss those claims under Fed. R. Civ. P. 12(b)(6).

STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of

the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

## ANALYSIS

The plaintiffs' amended complaint contains three separately-pled claims under ERISA. Count I is brought under § 1132(a)(1)(B), which provides that a plan participant or beneficiary may sue "to recover benefits due to h[er] under the terms of h[er] plan." § 1132(a)(1)(B). Count II is brought under § 1132(a)(3), which authorizes a plan participant to sue "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan[.]" § 1132(a)(3). And count III is brought under § 1132(a)(2), which authorizes plan participants or beneficiaries to sue "for appropriate relief under section 1109 of this title[.]" § 1132(a)(2). The defendants move to dismiss counts II and III (plaintiffs' "equitable claims") on various grounds. Filing 40.

Before turning to the merits of the defendants' motion, the Court will address two separate, yet related points. First, for reasons that will become

clear, it is worth reiterating who is—and who is not—a party to this dispute. As noted above, the plaintiffs are Deborah Pearson, the plan beneficiary, and Angel MedFlight, the provider of the air-ambulance service (collectively, "Pearson"). The defendants are Wellmark Inc. and United Suppliers, Inc. Group Health Plan (collectively, "Wellmark"). Defendant Wellmark Inc. administers the group health plan under which Pearson is a beneficiary. *See*, filing 37 at 2; filing 42-1 at 11. Defendant United Suppliers, Inc. Group Health Plan is the underlying benefits plan that is sponsored by United Suppliers, Inc. and administered by Wellmark Inc. Filing 37 at 2. The plan sponsor—United Suppliers, Inc.—is not a named defendant.

Second, as discussed in more detail below, the present dispute concerns Pearson's entitlement, if any, to documents that Wellmark allegedly relied on in denying full reimbursement. But Pearson has only specifically identified one such document: the air-ambulance fee schedule. And she has provided no basis for her contention that Angel MedFlight, which is neither a plan beneficiary or participant, is similarly entitled. So, for present purposes, the Court will address whether Pearson (and Pearson alone) may proceed on her claims based on an alleged entitlement to the air-ambulance fee schedule.

Pearson's equitable claims generally pertain to Wellmark's allegedly improper withholding of its air-ambulance fee schedule. By failing to produce this document, Pearson alleges, Wellmark is in violation of certain ERISA disclosure provisions, its fiduciary duty as claims administrator, and the express terms of the underlying benefits plan. *See* filing 36 at 7. Accordingly, Pearson seeks equitable relief under § 1132(a)(2) and (3).

Wellmark moves to dismiss Pearson's equitable claims on two main grounds. First, Wellmark argues that counts II and III of the amended complaint are duplicative of count I, and therefore must be dismissed under

controlling Supreme Court precedent. Second, Wellmark argues that, notwithstanding the "duplicative" nature of the complaint, Pearson's equitable claims fail as a matter of law. The Court will address both arguments, in turn.

### 1. DUPLICATIVE CLAIMS

Wellmark argues that Pearson's equitable claims are duplicative of count I, and therefore must be dismissed under controlling Supreme Court precedent. To support this contention, Wellmark argues that Pearson, despite pleading multiple grounds for recovery, has suffered only one injury: a partial denial of benefits. *See* filing 41 at 5. And because § 1132(a)(1)(B) (*i.e.*, count I) provides an adequate remedy for that alleged injury, Pearson cannot seek additional equitable relief under § 1132(a)(2) and (3) (*i.e.*, counts II and III). Filing 41 at 6.

Wellmark's argument derives from *Varity Corp. v. Howe*, 516 U.S. 489 (1996). In *Varity*, the Supreme Court addressed the interaction between § 1132(a)(1)(B), which provides a remedy for the wrongful denial of benefits, and § 1132(a)(3), which authorizes civil actions

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

§ 1132(a)(3). In discussing these provisions, the Court characterized § 1132(a)(3) as a "catchall" that "act[s] as a safety net, offering appropriate equitable relief" for certain injuries caused by violations of § 1132. *Varity*, 516

U.S. at 512. But despite this seemingly broad interpretation, the Court was clear that equitable relief is not, in every circumstance, "appropriate":

> We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind . . . that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Id.* at 515; *See Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 943 (8th Cir. 1999) (§ 1132(a)(3) is not a "limitless free-for-all").

The Eighth Circuit has interpreted *Varity* as limiting a plaintiff's ability to pursue both equitable and compensatory relief under § 1132. In *Pilger v. Sweeney*, for example, the Eighth Circuit—citing *Varity*—affirmed a district court's grant of summary judgment denying the plaintiffs' claim for equitable relief. 725 F.3d 922, 927 (8th Cir. 2013). "Count Three fails," the court wrote, "because its § 1132(a)(3)(B) claim mirrors Count One's § 1132(a)(1)(B) claim." *Id.* And "'[w]here a plaintiff is provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B).'" *Id.* at 927 (quoting *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006)).

Applying these principles, Wellmark urges dismissal of Pearson's equitable claims, arguing that they are in no way distinct from her claim under § 1132(a)(1)(B) (count I) for denial of benefits. Filing 46 at 1. And because (a)(1)(B) provides an adequate remedy for the injury alleged, Pearson "should not be allowed to obtain some additional, equitable relief for that same injury." Filing 46 at 2.

Wellmark's argument fails for at least two reasons. First, this matter is before the Court on a Rule 12(b)(6) motion, not one for summary judgment—and that distinction matters. In *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711 (8th Cir. 2014), the Eighth Circuit refused to dismiss a claim for equitable relief under § 1132(a)(3) notwithstanding the plaintiff's identical claim for benefits under § 1132(a)(1)(B).[1] In doing so, the Court of Appeals distinguished its prior holding in *Pilger* (that a plan beneficiary cannot bring both (a)(1)(B) and (a)(3) claims) "based on the stage of litigation the court was reviewing." *Silva*, 762 F.3d at 727. In other words, the court reasoned, while *Pilger* and *Varity* prohibit duplicative *recoveries*, they do not—as Wellmark suggests here—"stand for the proposition that [a beneficiary] may only plead one cause of action." *Silva*, 762 F.3d at 726. The court further remarked:

> We recognize that this interpretation of *Varity* may seem to be at odds with earlier Eighth Circuit cases. These cases, however, are distinguishable based on the stage of litigation the court was reviewing. All three cases [including *Pilger*] were on appeal from a motion for summary judgment—not a motion to dismiss. This is important because . . . [a]t summary judgment, a court is better equipped to assess the likelihood for duplicate recovery, analyze the overlap between claims, and determine whether one claim alone will provide the plaintiff with "adequate relief."

*Id.* at 727 (internal citations omitted); *see Jones v. Aetna Life Ins. Co.*, No. 16-1714, 2017 WL 1825373, at *3-4 (8th Cir. May 8, 2017).

---

[1] The claims were "identical" in that they sought the same relief.

Second, accepting Pearson's allegations as true, the amended complaint does not, as Wellmark argues, seek duplicative recovery for the *same* injury. Rather, Pearson seeks benefits under § 1132(a)(1)(B) that, she alleges, were wrongfully denied to her, and equitable relief based on Wellmark's alleged refusal to comply with ERISA's disclosure requirements. And while it is true that Pearson's claims derive from the same factual premise—*i.e.*, Wellmark's denial of benefits—that fact is not, at least at this stage of the proceeding, dispositive under *Varity*. *See Silva*, 762 F.3d at 728 n.12 ("similarity in the form of the remedy sought does not alter our view that [the beneficiary] should have the opportunity to plead and argue both claims"). Accordingly, Wellmark's motion to dismiss counts II and III on these grounds is denied.

## 2. ALTERNATIVE GROUNDS FOR DISMISSAL

Wellmark raises several alternative grounds for dismissal. The Court will address these arguments as they pertain to each of Pearson's separately-pled claims for relief.

### (a) Count II: Equitable Relief Under § 1132(a)(3)

As noted above, Pearson seeks equitable relief from Wellmark's alleged refusal to produce documents "relevant to the benefit determination." Filing 37 at 6. This claim is premised on the general principle that, as a plan beneficiary, Pearson is entitled to certain information regarding her plan. And according to Pearson, this entitlement extends to the very documents at issue here—namely, the air-ambulance fee schedule. Pearson cites two independent sources that she says *require* Wellmark to produce the requested documents: (i) ERISA's disclosure requirements; and (ii) Wellmark's fiduciary duty as claims administrator. *See* filing 37 at 6.

*(i) ERISA Disclosure Requirements*

Pearson claims that she is entitled to injunctive relief based in part on Wellmark's alleged (and ongoing) violations of ERISA's disclosure requirements—specifically, 29 U.S.C. §§ 1024(b)(4) and 1133(2). *See* filing 37 at 6. Wellmark argues that these disclosure provisions do not extend to the information at issue here. Filing 41 at 13. And even if they did, the duty to disclose the documents lies with United Suppliers, Inc., as *plan* administrator, not Wellmark, as *claims* administrator. Filing 41 at 9.

The Court will address these arguments in reverse order. In other words, the Court begins with Wellmark's more general contention that, to the extent a substantive violation of ERISA has occurred, the remedy lies with United Suppliers, Inc., not Wellmark. The Court will then turn to Wellmark's separate, yet related argument as to why, in its view, ERISA's disclosure provisions do extent to the information which Pearson demands.

<u>*Claims Administrator*</u>

Wellmark urges dismissal on account of its status as claims administrator. This argument proceeds as follows: to the extent that Pearson is owed the document she requests, the duty to disclose that documents lies with the *plan* administrator. And because Wellmark is the *claim*s administrator—not the *plan* administrator—count II necessarily fails as a matter of law. Simply put, Wellmark argues: Pearson has sued the wrong entity. *See* filing 41 at 9.

Wellmark's argument touches on the difference between a *claims* administrator and a *plan* administrator. As one court recently observed, whereas a *plan* administrator makes "plan-level decisions about covering employees (e.g., whether employee *x* will be covered at all—for *anything*—under the policy)," a *claims* administrator makes "claim-level decisions about

paying benefits (e.g., to what extent employee *x*'s visit to doctor *y* on date *z* is covered)." *Werb v. ReliaStar Life Ins. Co.*, 847 F. Supp. 2d 1140, 1146 (D. Minn. 2012). Presumably, then, the claims administrator's duties are more limited and circumscribed than the plan administrator's. *See Butler v. United Healthcare of Tenn.*, 764 F.3d 563, 570 (6th Cir. 2014) ("the role of claims administrator usually does not confer on the party the status of plan administrator").

Wellmark points to another, more fundamental, distinction: whereas a *plan* administrator is subject to ERISA's disclosure requirements, a *claims* administrator is not. *See*, *LaSalle v. Mercantile Bancorporation, Inc.*, 498 F.3d 805, 810 n.2 (8th Cir. 2007) (1024(b)(4) "places obligations on the *plan* administrator . . . not the *claims* administrator"); *Ross v. Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 743 (8th Cir. 2002); *see also Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009). And here, the Summary Plan Description expressly designates United Suppliers, Inc.— *not* Wellmark—as the "Plan Administrator." *See* filing 42-1 at 11. So, Wellmark argues, to the extent that ERISA's substantive disclosure provisions apply, the remedy lies with United Suppliers, Inc. which, as previously noted, is not a party to this dispute.

Pearson acknowledges Wellmark's role as a claims administrator. But, she argues, that fact is not dispositive because she—unlike the above-cited cases—seeks equitable relief, and not monetary penalties, for the alleged violation of § 1024(b)(4). Filing 45 at 7. In this way, Pearson sees a distinction between claims for monetary penalties,[2] which must be asserted against the

---

[2] Violations of § 1024(b)(4) are typically enforced through § 1132(c)(1), which renders a non-compliant administrator liable for fines in the event that it fails to timely produce requested plan documents. Pursuant to that provision, a district court may, in its

plan administrator, and claims for injunctive relief under § 1132(a)(3), which may proceed against "[any] universe of possible defendants." Filing 45 at 7.

Pearson's argument derives from the Supreme Court's holding in *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000). In *Harris Trust*, the Supreme Court considered whether § 1132(a)(3) provides a cause of action against a *nonfiduciary* for a violation of an ERISA provision that, by its very terms, applies only to *fiduciaries*. *See id.* at 245 (citing 29 U.S.C. § 1106(a)(1)). The defendant urged dismissal of the claim, arguing that ERISA's substantive provisions imposed no duty on it—as a nonfiduciary—to conform to certain statutorily prescribed conduct. *Id.* at 245. The Supreme Court disagreed, noting:

> Salomon[]. . . rightly note[s] that § 406(a) imposes a duty only on the fiduciary that causes the plan to engage in the transaction. We reject, however, . . . Salomon's conclusion that, absent a substantive provision of ERISA expressly imposing a duty upon a nonfiduciary party in interest, the nonfiduciary party may not be held liable under § [1132(a)(3)], one of ERISA's remedial provisions. Petitioners contend, and we agree, that § [1132(a)(3)] itself imposes certain duties, and therefore that liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued.

*Id.* at 245 (internal citations omitted). Applying those principles here, Pearson argues that Wellmark—irrespective of its substantive duties (or lack

---

discretion, impose a fine of up to $110.00 per day during the period of noncompliance. *See* 29 C.F.R. § 2575.502c-3.

thereof) as claims administrator—is a proper defendant under § 1132(a)(3). Filing 45 at 7. After all, it argues, a violation of ERISA has occurred, and that violation warrants "appropriate equitable relief." § 1132(a)(3). And the availability of that relief, Pearson contends, does not turn on the scope, if any, of the defendant's duties under the applicable substantive provisions. Filing 45 at 7 (citing *Harris Trust*, 530 U.S. at 246 (section (a)(3) "admits of no limit . . . on the universe of possible defendants")).

While it is not clear that *Harris Trust* necessarily applies to the facts of this case, *see National Sec. Syst., Inc. v. Iola*, 700 F.3d 65, 90 (3d Cir. 2012), the Court concludes that Pearson has provided enough at this early stage to proceed on her claim for injunctive relief. Indeed, Pearson claims that she is entitled to the air-ambulance fee schedule, which the claims administrator allegedly relied upon in denying her claim for benefits. The withholding of this document, Pearson says, amounts to a substantive violation of ERISA's disclosure provisions. And, she claims, the only "adequate remedy" for this alleged violation is an injunction against the withholding party. Accordingly, Wellmark's motion to dismiss on these grounds will be denied.

### *Disclosure Provisions*

Wellmark next contends that, even assuming it is a properly named defendant, count II still fails because ERISA's disclosure provisions "do not extend to the information sought." Filing 41 at 13. So, Wellmark argues, because no substantive violation has occurred, there is nothing for the Court to enjoin. The Court will address Wellmark's arguments as they pertain to both § 1024(b)(4) and § 1133(2).

### 29 U.S.C. § 1024(b)(4)

Pearson claims that she is entitled to injunctive relief based in part on Wellmark's alleged violation of 29 U.S.C. § 1024(b)(4). That provision

requires the administrator of a plan to produce to plan participants certain documents upon request:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, *or other instruments under which the plan is established or operated*.

§ 1024(b)(4) (emphasis added). The purpose of § 1024(b)(4) is to "ensure[] that 'the individual participant knows exactly where [s]he stands with respect to the plan[.]" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989).

Pearson relies on the latter half of the provision—specifically, the requirement that the plan administrator produce "instruments under which the plan is established or operated." Filing 45 at 12. She argues that the air-ambulance fee schedule falls within this definition because Wellmark relied on it in denying her full claim for reimbursement. Filing 45 at 13. In other words: "[e]ven if, as a general proposition, the fee schedule and similar documents are not 'instruments under which the plan is established or operated,' those documents become so when they are expressly cited and treated as such." Filing 45 at 12. And because Wellmark expressly relied on the documents, Pearson says, they must be disclosed under § 1024(b)(4).

Wellmark disagrees, arguing that § 1024(b)(4)'s catch-all reference to "other instruments under which the plan is established or operated" must be interpreted narrowly. Filing 46 at 11. In particular, it suggests that the statutory language encompasses "only those formal or legal documents under which a plan is set up or managed, not all documents by means of which the

plan conducts operations." Filing 46 at 11. It supports this proposition with reference to *Brown v. Am. Life Holdings, Inc.*, 64 F. Supp. 2d 882, 889-90 (S.D. Iowa 1998), *aff'd*, 190 F. 3d 856 (8th Cir. 1999).

In *Brown*, a district court rejected the argument that § 1024(b)(4)'s catch-all provision applied to various documents which the plaintiff had requested, such as minutes of administrative meetings, resolutions, and certain written communications. *Id.* at 887. The court, in reaching this decision, applied a narrow interpretation of the statutory language, concluding that the plan administrator need only produce those documents "that are similar in nature" to the documents specifically enumerated in the statute—that is, updated summary plan descriptions, annual and terminal reports, and bargaining and trust agreements. *Id.* at 889. And because administrative minutes, for example, are not "similar in nature" to an annual report, the plan administrator was under no obligation to disclose them. *See also Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003) (the broad term "other instruments" should be limited to the class of objects that specifically precedes it).

But Pearson does not allege an entitlement to internal guidelines or memoranda which, as several courts have determined, fall outside of § 1024(b)(4)'s reach. Rather, she seeks the air-ambulance fee schedule which Wellmark allegedly relied on "to cut her benefit payment." Filing 45 at 1. And because Wellmark allegedly used the document in that way, Pearson argues, it is necessarily one that "govern[s] (or restrict[s]) the operation of the plan," and is thus subject to § 1024(b)(4). Filing 45 at 12-13 (citing *Eden Surgical Center v. Budco Group, Inc.*, 2010 WL 2180360, at *6 (C.D. Cal. 2010)); *see Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781, 801 (7th Cir. 2009).

The Court assumes at this early stage of the proceeding that Wellmark used the air-ambulance fee schedule in the manner Pearson describes. *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013). Accordingly, the Court cannot conclude, as Wellmark argues here, that the document (which the Court has not seen and knows almost nothing about) necessarily falls outside of § 1024(b)(4)'s reach. Wellmark's motion to dismiss on these grounds will be denied.

### 29 U.S.C. § 1133(2)

Pearson's claim for equitable relief is also premised on 29 U.S.C. § 1133(2), which requires that every employee benefit plan "afford a reasonable opportunity . . . for a full and fair review" of the adverse benefit determination. § 1133(2). Affording such an opportunity requires that the "claimant . . . be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). A document is deemed "relevant" if it "[w]as relied upon in making the benefit determination[.]" § 2560.503-1(m)(8)(i).

Wellmark argues that § 1133(2) provides for "remand to the plan administrator," and not—as Pearson seeks here—equitable relief in the form of an injunction. *See* filing 41 at 11. Thus, Wellmark contends, because injunctive relief is not a proper remedy for the alleged breach, the claim necessarily fails as a matter of law. Filing 41 at 11.

It is true, as Wellmark contends, that remand is an appropriate remedy for a violation of § 1133(2). *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1087 (8th Cir. 2009); *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000). It is also clear that, depending on the circumstances, other relief (such as an award of benefits) may not be available to an otherwise aggrieved

plaintiff. *Brown*, 586 F.3d at 1087. But Wellmark has provided no authority to suggest that a claimant, like Pearson, is *necessarily* foreclosed from pursuing equitable relief under § 1132(a)(3), which expressly permits civil actions "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." § 1132(a)(3). And without such authority, dismissal at this early stage of the litigation is unwarranted. Wellmark's motion to dismiss on these grounds will be denied.

### *(ii) Fiduciary Duty*

Pearson cites a separate and independent source which, she argues, mandates the disclosure of the requested document: Wellmark's duty as a plan fiduciary. Filing 45 at 10. Wellmark is in breach of that duty, Pearson argues, by withholding the fee schedule. And according to Pearson, that breach warrants equitable relief under § 1132(a)(3). Wellmark argues that no such duty exists, because the conduct that forms the basis of Pearson's claim—*i.e.*, "calculating benefits and providing documents related to that calculation"—is "ministerial in nature." Filing 46 at 3. And because "ministerial functions" do not impose fiduciary status, it necessarily follows that Wellmark is under no obligation to produce the document at issue. *See* filing 46 at 2-3.

The Court will deny Wellmark's motion on these grounds for two reasons. First, Wellmark raises (or at least attempts to develop) this argument for the first time in its reply brief. *See* filing 46 at 2-4. And as such, the argument—to the extent that it applies here—remains underdeveloped. Thus, the Court is not inclined to dismiss Pearson's claim on these grounds. But more to the point, Wellmark's argument seems to turn on the level of discretion (if any) that it had in performing the relevant functions that give rise to Pearson's claim. And that determination, the Court concludes, cannot

be made at this early stage of the proceeding. So, while Wellmark may (or may not) prevail on this point, the Court will save that determination for a later date.

(b) Count III: Equitable Relief under 29 U.S.C. § 1132(a)(2)

Pearson, in count III, seeks equitable relief under §§ 1132(a)(2) and 1109(a) "on behalf of the plan" (the same plan, the Court notes, that is a codefendant in this case). Specifically, Pearson seeks to remove Wellmark as a fiduciary based on its "general practice" of withholding its air-ambulance fee schedule and other relevant documents. Filing 37 at 7.

Claims under § 1132(a)(2)—unlike those under (a)(3)—are designed to protect the entire plan, rather than the rights of individual beneficiaries. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 (1985). Accordingly, to state a claim for relief under (a)(2), the claimant must generally allege a "pattern or practice of fiduciary violations" that give rise to the specific relief sought—here, removal of Wellmark as a fiduciary. *Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir. 1999). Pearson has failed to satisfy this threshold here, and accordingly count III will be dismissed. Indeed, Pearson merely alleges that, "[o]n information and belief," it is Wellmark's practice to withhold certain disclosable documents. Filing 37 at 6. But she has provided no *factual* allegations to support this claim. *Iqbal,* 556 U.S. at 678. Accordingly, count III of Pearson's complaint is dismissed.

CONCLUSION

For the reasons explained above, Wellmark's motion to dismiss will be granted in part and denied in part. Specifically, Wellmark's motion to dismiss count II of Pearson's amended complaint is denied. Pearson may pursue her claim for equitable relief based on Wellmark's alleged violations of ERISA's disclosure provisions, and on account of its role as a plan fiduciary.

Wellmark's motion to dismiss count III, however, will be granted. That claim is dismissed.

IT IS ORDERED:

1. The defendants' motion to dismiss (filing 40) is granted in part and denied in part.

2. Count III of the plaintiffs' complaint is dismissed.

3. The plaintiffs' motion to file a surreply brief (filing 47) is denied as moot.

4. This matter is referred to the Magistrate Judge for case progression.

Dated this 31st day of May, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge